IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FILED
NOV 3 0 2009

CRM COLLATERAL II, INC.,

    Plaintiff,

v.

CV 08-1266-PK (LEAD)

OPINION AND ORDER

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF
OREGON,

    Defendant.

---

MARK GUETZKO, LISA GUETZKO,
RICHARD ALTORFER, SEEDORFF
MASONRY, INC., DALE KARTMAN,
SUSAN KARTMAN, and SEEDORFF
PARTNERSHIP, LLP,

    Plaintiffs,

CV 09-1135-PK

v.

CRM COLLATERAL II, INC.,

    Intervenor Plaintiff,

Page 1 - OPINION AND ORDER

v.

KEYBANK NATIONAL ASSOC.,

    Defendant,

v.

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF
OREGON,

    Intervenor Defendant.

PAPAK, Magistrate Judge:

    Plaintiffs Mark Guetzko, Lisa Guetzko, Richard Altorfer, Seedorff Masonry, Inc., Dale Kartman, Susan Kartman, and Seedorff Partnership, LLP, filed this action against defendant KeyBank National Association ("KeyBank"), Raymond James Financial Services, and Jeffrey State on November 5, 2008, in the Iowa District Court for Clayton County. Plaintiffs moved for, and received, an injunction from the Iowa state court enjoining KeyBank from honoring a draw by Tri-County Metropolitan Transportation District of Oregon ("TriMet") on Irrevocable Standby Letter of Credit No. 312084 (the "Letter of Credit") dated November 17, 2006, as to which CRM Collateral II, Inc. ("CRM"), was the applicant, TriMet was the beneficiary, and KeyBank was the issuer. Shortly thereafter, plaintiffs voluntarily dismissed Raymond James Financial Services and Jeffrey State as defendants. The action was removed to the federal district court for the Northern District of Iowa, where TriMet and CRM were permitted to intervene. Subsequently, the action was transferred to this court, where it was consolidated with *CRM Collateral II Inc. v.*

Page 2 - OPINION AND ORDER

*Tri-County Metropolitan Transportation District of Oregon*, CV-08-1266-PK ("*CRM v. TriMet*"), with *CRM v. TriMet* designated as the lead case.

On November 13, 2009, I granted TriMet's motion to dissolve the injunction enjoining KeyBank from honoring TriMet's draw request. On November 17, 2009, plaintiffs moved for reconsideration of the order of November 13, requesting expedited consideration. I denied the request for reconsideration by minute order (#68) on November 18, 2009, indicating that a formal order would follow. This order addresses the issues raised by plaintiffs' motion (#67) for reconsideration.

## LEGAL STANDARDS

It is appropriate to alter or amend a judgment under Federal Civil Procedure Rule 59(e) if "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009), *quoting Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001).

## FACTUAL BACKGROUND

### I.  Material Underlying Facts

In November 2005, TriMet entered into Contract No. RH030433LE (the "Contract") with third party Colorado Railcar Manufacturing, LLC ("Colorado Railcar"), pursuant to which Colorado Railcar would manufacture and TriMet would purchase three railcars and one trailer for TriMet's use in connection with its Westside Express Service ("WES") between Beaverton, OR, and Wilsonville, OR. TriMet's price for the railcars and trailers was initially fixed at

Page 3 - OPINION AND ORDER

$17,821,806, but was subsequently reduced, first to $17,481,135 and later to $17,299,135. The Contract required Colorado Railcar to maintain an irrevocable standby letter of credit in the amount of $3 million continuously from the time it issued notification that manufacture would begin to the final delivery of railcars and trailers to TriMet.

CRM was incorporated November 13, 2006, for the purpose, among other potential legal purposes, of fulfilling Colorado Railcar's letter of credit obligation under the Contract. Colorado Railcar's CEO, Thomas Rader, is one of CRM's two corporate directors, and Colorado Railcar's CFO, John Thompson, was CRM's registered agent at the time CRM was incorporated. CRM's second corporate director and its sole corporate officer (both its President and its Treasurer) was Scott State,[1] who worked with Colorado Railcar as a consultant from 2004 through 2007.

On November 17, 2006, Colorado Railcar, CRM, and the plaintiffs to this action entered into an Investment Agreement whereby Colorado Railcar agreed to pay plaintiffs and CRM to maintain a letter of credit in satisfaction of Colorado Railcar's obligation to do so under the Contract. That same day, CRM obtained the Letter of Credit from KeyBank. The Letter of Credit identified CRM as the "applicant" and TriMet as the "beneficiary." The terms of the Letter of Credit required TriMet to certify in writing that CRM was in default under the Contract – although CRM was not at that time a party to the Contract – in order to draw on the letter as its beneficiary. As originally issued, the expiration date of the Letter of Credit was November 15, 2007.

In April 2007, TriMet learned for the first time that CRM was the applicant on the Letter of Credit. Effective April 20, 2007, TriMet, Colorado Railcar, and CRM agreed to a written

---

[1] Former defendant Jeffrey State is Scott State's brother.

Page 4 - OPINION AND ORDER

modification of the Contract (Modification No. 1), pursuant to which CRM became a party to the Contract for the sole purpose of making a default by Colorado Railcar under the Contract constitute a default by CRM for purposes of the Letter of Credit. Rader represented CRM in the negotiation of Modification No. 1, and State signed Modification No. 1 on CRM's behalf. In addition, in connection with Modification No. 1 CRM supplied to TriMet certain organizational resolutions issued by CRM's board of directors providing that only officers of the corporation – namely, Scott State and no other person – were authorized to enter into agreements on CRM's behalf.

In October 2007, the parties agreed to extend the Letter of Credit's expiration date from November 15, 2007, to May 15, 2008. Rader and Thompson participated in the extension negotiations, and Scott State did not, although he ultimately signed the amendment that effected the extension.

On January 16, 2008, TriMet and Colorado Railcar entered into a Project Monitoring Agreement (the "PMA") that modified their rights and obligations under the Contract. CRM was not a party to the PMA, nor was CRM directly advised that the PMA had been executed – that is, Scott State was not advised, although Rader was necessarily aware of the PMA in consequence of his status as Colorado Railcar's CEO. The PMA modified the relationship between Colorado Railcar and TriMet, in relevant part, as follows: under the PMA, TriMet would make "special contract payments" to or on behalf of Colorado Railcar, including payments not provided for under the Contract; TriMet was authorized to fund these special payments by drawing on the Letter of Credit; such special payments, if neither earned under the Contract nor repaid by Colorado Railcar, would become "damages" under the Contract; and TriMet was authorized to

Page 5 - OPINION AND ORDER

compensate itself for such special payments that Colorado Railcar failed to repay by drawing on the Letter of Credit. In addition, under the PMA a "financial monitor" was appointed to oversee Colorado Railcar's operations, and TriMet was given authority to approve or disapprove of Colorado Railcar's budgets and expenditures.

The PMA was modified on February 21, 2008, primarily to add Alaska Railroad Corporation as an additional party. CRM was not a party to the amended PMA, nor was the amended PMA disclosed directly to CRM.

In April 2008, the parties agreed to a second extension of the expiration date of the letter of Credit, from May 15, 2008, to November 15, 2008. Rader and Thompson were involved in the negotiation of the extension and Scott State was not, although he signed the amendment that effected the extension. No party informed Scott State of the existence of the PMA or amended PMA prior to CRM's consent to the extension.

In June 2008, Thompson advised Scott State of the existence of the amended PMA, which Thompson characterized as an agreement that he had not been "involved with." Deposition of Scott State ("Scott State Dep.") at 153:11. Scott State requested that Thompson send him a copy of the amended PMA, and Thompson did so. Scott State Dep. at 153:13-19. Scott State read the amended PMA and understood, at a minimum, that it "purported to give TriMet the right to call on the [L]etter of [C]redit to compensate [itself] for special contract payments under the PMA." Scott State Dep. at 157:17-19. Scott State did not contact TriMet to discuss the amended PMA or its impact on CRM's obligations under the Letter of Credit at that time, but rather discussed the matter with KeyBank and hired an attorney to represent him and/or CRM. Scott State Dep. at 157:20 - 158:10.

Page 6 - OPINION AND ORDER

In or around September or October 2008, Colorado Railcar completed the manufacture and delivery of the railcars and trailer, and shortly thereafter ceased operations. Prior to the completion date, TriMet made more than $5.5 million in special contract payments to Colorado Railcar under the auspices of the PMA and amended PMA. On October 22, 2008, TriMet attempted to draw on the Letter of Credit to reimburse itself for $3 million of those special contract payments.

## II. Relevant Procedural History

On October 27, 2008, CRM and Richard Altorfer[2] filed the *CRM v. TriMet* action, simultaneously moving for a temporary restraining order to enjoin KeyBank from honoring TriMet's draw request. Judge King granted the *CRM* plaintiffs' motion, and set a preliminary injunction hearing for November 7, 2008. On November 5, 2008, plaintiffs filed this action against KeyBank, Raymond James Financial Services, and Jeffrey State in the state court for Clayton County, Iowa, likewise moving to enjoin TriMet's draw request. On November 7, 2008, the Iowa court granted plaintiffs' motion, and issued an Iowan temporary injunction (the "Injunction") enjoining KeyBank from honoring TriMet's draw request of October 22, 2008. In consequence, the preliminary injunction hearing set in the *CRM v. TriMet* action did not take place and the TRO entered by Judge King was permitted to lapse.

On November 12, 2008, KeyBank removed the Clayton County action to the federal Northern District of Iowa, and on November 14, 2008, TriMet moved to intervene on an expedited basis. Also on November 14, 2008, TriMet attempted to file a motion to dissolve the

---

[2] Altorfer was voluntarily dismissed as a plaintiff to the *CRM v. TriMet* action on November 4, 2008.

Page 7 - OPINION AND ORDER

Injunction, but its filing was not accepted until December 4, 2008, the date the court for the Northern District of Iowa granted TriMet's motion to intervene.

On January 22, 2009, CRM also moved to intervene in the Iowa action. On February 25, 2009, its motion was granted.

On September 18, 2009, in the *CRM v. TriMet* action, this court denied both CRM's motion for partial summary judgment and TriMet's cross-motion for summary judgment. In relevant part, the court denied TriMet's motion for summary judgment as to CRM's claim of material fraud. In connection with its fraud claim, CRM alleged in its complaint that TriMet had fraudulently obtained extension of the expiration date of the Letter of Credit from May 15, 2008, to November 15, 2008, by concealing certain material facts from CRM at the time the extension was negotiated. I ruled that the evidentiary record did not foreclose all possible theories upon which TriMet could be found liable for fraud.

On September 22, 2009, the Iowa action was transferred to this court, no ruling having yet been entered on TriMet's motion to dissolve the Injunction. TriMet renewed its motion to dissolve in this court on October 5, 2009.

On October 22, 2009, this action was consolidated with the *CRM v. TriMet* action. *CRM v. TriMet* was designated as the lead case and *Guetzko v. KeyBank* was designated as a member case in the consolidated action. On November 13, 2009, I granted TriMet's motion to dissolve the Injunction enjoining KeyBank from honoring TriMet's draw request.

On November 17, 2009, plaintiffs moved for reconsideration of my order of November 13, 2009, requesting expedited consideration. I denied the request for reconsideration by minute order on November 18, 2009. This order sets forth the reasoning underlying my minute order of

Page 8 - OPINION AND ORDER

November 18, 2009.

## ANALYSIS

On November 13, 2009, I granted TriMet's motion to dissolve the Injunction issued by the Clayton County, Iowa court against KeyBank on November 7, 2008. My analysis of TriMet's motion may be briefly summarized as follows. First, I construed the Iowa court's temporary injunction as though it had been issued by this court as a preliminary injunction, following the analysis set forth in *Preaseau v. Prudential Ins. Co.*, 591 F.2d 74, 79 (9th Cir. 1979). Second, I construed the motion to dissolve as a Federal Civil Procedure Rule 59(e) motion for reconsideration under the analysis outlined in *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005) (and further construed the motion as timely under Rule 59(e)). Third, I analyzed the likelihood that plaintiffs would prevail on their claim that TriMet procured the extension of the Letter of Credit's deadline by fraud, on the basis of all the evidence available to me at the time I considered TriMet's motion (and did not restrict my analysis to information available to the Iowa court at the time the Injunction issued).

Plaintiffs advance two assignments of error in connection with my order of November 13, 2009. First, plaintiffs assert that I impermissibly substituted my own judgment for that of the issuing court. Second, plaintiffs assert that I erred in concluding that plaintiffs were not more likely than not to prevail on their claim of fraud. On reconsideration, I conclude that each of plaintiffs' arguments is without merit.

Plaintiffs' first argument is founded on a patently unsound premise, namely, that in considering whether the Injunction should be dissolved I was constrained to apply an *appellate* standard of review. TriMet's motion is not, however, properly construed as an appeal of the

Page 9 - OPINION AND ORDER

order by which the Injunction issued, but rather as a motion for reconsideration of that order. *See Credit Suisse*, 400 F.3d at 1124. On a motion for reconsideration, a court is not merely authorized but expected to reconsider the merits of its prior decision, and is not required to refrain from disturbing its prior ruling if that ruling enjoyed a degree of support from the evidentiary record. *See, e.g., United Nat'l*, 555 F.3d at 780. Indeed, on the theory plaintiffs advocate, the Injunction would have become effectively immune to modification following the removal of this case to federal court.

Plaintiffs' second argument, by contrast, is merely unpersuasive. The gravamen of the argument is that because the order of November 13, 2009, "appear[ed] to overlook" that, in Oregon, the element of intent in a fraud action may be proved by establishing the fraud defendant's "reckless disregard of the fact that plaintiff was being misled," *Elizaga v. Kaiser Foundation Hospitals, Inc.*, 259 Or. 542, 548 (1971), I committed clear error in failing to conclude that plaintiffs were more likely than not to prevail as to their claim of fraud. Motion for Reconsideration at 4.

Nothing in the November 13, 2009, order was intended to reject Oregon law establishing that reckless disregard may satisfy the intent element of a fraud action, nor to suggest that my conclusion that plaintiffs had failed to establish that they were more likely than not to prevail on their fraud claim was limited to a scenario in which plaintiffs would be required to prove a higher level of scienter than required by law. On November 13, 2009, I found, and now on reconsideration find again, on the evidentiary record now before the court, that plaintiffs are not more likely than not ultimately to establish by clear and convincing evidence either that TriMet intended to obtain CRM's consent to the extension of the Letter of Credit by fraud or that TriMet

Page 10 - OPINION AND ORDER

acted in reckless disregard of whether CRM was being misled regarding the existence of the PMA at the time it negotiated the extension.

Numerous facts in the evidentiary record underlie this finding. First, there is no evidence in the record that TriMet took any action calculated to prevent CRM from learning of the existence of the PMA. Second, there is no evidence in the record that TriMet had actual knowledge, or should have had knowledge, of State's ignorance of the PMA. Third, TriMet negotiated the extension with Rader, whose knowledge of the PMA and whose status as one of CRM's corporate directors were both well known to it. Fourth, evidence in the record establishes that State needed no inducement to agree to the extension, but to the contrary believed that failure to obtain the extension would be "a disaster" for CRM. Fifth, and perhaps most critically, it is undisputed that Colorado Railcar had breached its obligations under the Contract so that TriMet had a contractual right to draw on the Letter of Credit prior to the date the PMA was executed. It strains credulity to suggest under these circumstances that TriMet was willing to defraud or mislead CRM for the purpose of drawing on the Letter of Credit when that option was available to it in the absence of any improper machinations.

Because it would have been clear error for a federal court, under the facts presented in this consolidated action, to issue a preliminary injunction to enjoin KeyBank from honoring TriMet's draw request of October 22, 2008, I affirm on reconsideration that TriMet is entitled to immediate dissolution of the temporary injunction of November 7, 2008.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion (#67) for reconsideration is denied, as set forth in the court's minute order (#68) of November 18, 2009. KeyBank is not enjoined from

Page 11 - OPINION AND ORDER

honoring TriMet's October 22, 2008, request to draw on Irrevocable Standby Letter of Credit No. 312084.

Dated this 30th day of November, 2009.

_____
Honorable Paul Papak
United States Magistrate Judge

Page 12 - OPINION AND ORDER