IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FILED

NOV 1 0 2010

CRM COLLATERAL II, INC.,

    Plaintiff,

v.

CV 08-1266-PK (LEAD)

OPINION AND ORDER

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF
OREGON,

    Defendant.

---

MARK GUETZKO, LISA GUETZKO,
RICHARD ALTORFER, SEEDORFF
MASONRY, INC., DALE KARTMAN,
SUSAN KARTMAN, and SEEDORFF
PARTNERSHIP, LLP,

    Plaintiffs,

CV 09-1135-PK

v.

CRM COLLATERAL II, INC.,

    Intervenor Plaintiff,

Page 1 - OPINION AND ORDER

v.

KEYBANK NATIONAL ASSOC.,

    Defendant,

v.

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF
OREGON,

    Intervenor Defendant.

PAPAK, Magistrate Judge:

    Plaintiff CRM Collateral II, Inc. ("CRM"), and Richard Altorfer filed the lead case in this consolidated action against Tri-County Metropolitan Transportation District of Oregon ("TriMet") and KeyBank National Association ("KeyBank") on October 27, 2008. The parties' dispute arose out of TriMet's efforts to draw on a letter of credit as to which it was the beneficiary, KeyBank was the issuer, and CRM was the applicant. CRM alleged TriMet's liability for fraudulently securing CRM's consent to an extension of the letter of credit's effective period, sought to enjoin KeyBank from honoring any draw request on the letter of credit, requested this court's declaration that the letter of credit was unenforceable and that TriMet's draw request was a nullity, and requested rescission of the allegedly fraudulently obtained amendments to the letter of credit that had effected its extension. On November 4, 2008, Altorfer was voluntarily dismissed as a plaintiff in the lead case.

    On November 5, 2008, Mark Guetzko, Lisa Guetzko, Richard Altorfer, Seedorff

Page 2 - OPINION AND ORDER

Masonry, Inc., Dale Kartman, Susan Kartman, and Seedorff Partnership, L.P., filed an action in the Iowa District Court for Clayton County, Iowa against KeyBank, Raymond James Financial Services, and Jeffrey State. The *Guetzko* parties' dispute likewise arose out of TriMet's efforts to draw on the letter of credit issued by KeyBank to TriMet's benefit on CRM's application. The *Guetzko* plaintiffs had entered into agreements pursuant to which their assets secured CRM's obligation to repay any payments it made to TriMet in connection with TriMet's draw on the letter of credit, and sought the Iowa court's declaration that the letter of credit was unenforceable, that TriMet's draw request was a nullity, and that to honor TriMet's draw request would facilitate a major material fraud on CRM, as well as an injunction to enjoin KeyBank from honoring any draw request by TriMet.

On November 7, 2008, the Iowa court granted the *Guetzko* plaintiffs' motion for a temporary injunction, enjoining KeyBank from honoring any attempt by TriMet to draw on the letter of credit. The Iowa court further dismissed without prejudice the plaintiffs' claims against defendants Raymond James Financial Services and Jeffrey State.

On November 10, 2008, TriMet filed a counterclaim for declaratory relief in the lead action. By its counterclaim, TriMet requested this court's declaration that the letter of credit was valid and enforceable, that TriMet's draw request was enforceable, that CRM was in default on the underlying contract, and that TriMet was entitled to draw $3 million on the letter of credit (the maximum amount available).

On November 12, 2008, KeyBank removed the *Guetzko* action to the federal Northern District of Iowa, on the basis of diversity. On November 14, 2008, TriMet moved to intervene as a defendant in the *Guetzko* action. Its motion was granted December 4, 2008.

CRM voluntarily dismissed KeyBank as a party to the lead case on January 20, 2009.

On January 22, 2009, CRM moved to intervene as a plaintiff in the *Guetzko* action. Its motion was granted February 25, 2009.

On September 24, 2009, the *Guetzko* action was transferred to this court. At that time, the Iowa court's injunction enjoining KeyBank from honoring TriMet's draw requests remained in force. On October 5, 2009, TriMet renewed its motion, originally filed in the Northern District of Iowa, to dissolve the Iowa court's injunction.

On October 22, 2009, the *Guetzko* case was consolidated with CRM's case against TriMet, to become the member case in this consolidated action.

This court dissolved the injunction enjoining KeyBank from honoring TriMet's draw requests on November 13, 2009. On or around December 1, 2009, TriMet successfully drew on the letter of credit in the amount of $3 million.

On December 22, 2009, the court determined that CRM was a surety in connection with the contract underlying the letter of credit, and that as a matter of law the surety defense of discharge was available to CRM. On that basis, the court granted summary judgment in CRM's favor as to TriMet's counterclaim for declaratory judgment that CRM was in default on the contract underlying the letter of credit.

On February 5, 2010, KeyBank filed a counterclaim against CRM in the member case, seeking reimbursement for the funds it paid out to TriMet in connection with TriMet's draw. On February 16, 2010, CRM filed crossclaims against TriMet in the member case, for unjust enrichment, money had and received, breach of contract, breach of statutory warranty for falsely certifying CRM's default, and breach of statutory warranty premised on material fraud. On

February 26, 2010, KeyBank filed a crossclaim against TriMet in the member case, to be considered in the alternative to its counterclaim against CRM, seeking repayment of the moneys TriMet had received from its draw.

On April 8, 2010, the plaintiffs in the member case settled their dispute with KeyBank, agreeing that CRM was liable to KeyBank on KeyBank's counterclaim against CRM. However, CRM did not make any payment to KeyBank in connection with KeyBank's counterclaim against it at that time.

On May 26, 2010, the court granted summary judgment in TriMet's favor as to CRM's claims for declaratory judgment and common-law fraud in the lead case, as to CRM's crossclaim for breach of statutory warranty premised on material fraud in the member case and as to the plaintiffs' claim for declaratory judgment in the member case. The court further granted summary judgment in TriMet's favor as to CRM's crossclaims for unjust enrichment, money had and received, and breach of contract in the member case, with leave for CRM to refile those crossclaims in the event it suffered actual damages in connection with TriMet's draw on the letter of credit at some future date. The court further granted summary judgment in CRM's favor as to the narrow question of TriMet's liability on CRM's crossclaim for breach of statutory warranty for falsely certifying CRM's default in the member case, expressly leaving open the question of CRM's damages in connection with that claim.

On May 27, 2010, the court entered a consent judgment against CRM on KeyBank's counterclaim against it in the member case, awarding KeyBank the principal amount of $3,000,000 together with interest at KeyBank's Prime Rate plus five percent (5%), plus an additional $7,520. On July 29, 2010, CRM having satisfied the judgment against it in the

member case, KeyBank filed a satisfaction of judgment indicating that it had received $3,180,082.50 from CRM. On August 5, 2010, CRM amended its pleading in the member case to refile its crossclaims for unjust enrichment, money had and received, and breach of contract against TriMet.

Now before the court are CRM's motion (08-1266: #140; 09-1135: #118) for summary judgment as to its crossclaims against TriMet in the member case, and TriMet's motion (08-1266: #147; 09-1135: #125) for summary judgment as to CRM's crossclaims against it for unjust enrichment and for money had and received in the member case. I have considered the parties motions and all of the pleadings on file. For the reasons set forth below, CRM's motion is granted in part and denied in part as discussed below, and TriMet's motion is denied.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make

credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the other. *See* Fed. R. Civ. P. 56; *see also, e.g., Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). A court may not grant summary judgment where the court finds unresolved issues of material fact, even where the parties allege the absence of any material disputed facts. *See id.*

## FACTUAL BACKGROUND

### I.   Facts Underlying the Parties' Dispute

In November 2005, TriMet entered into Contract No. RH030433LE (the "Contract") with third party Colorado Railcar Manufacturing, LLC ("Colorado Railcar"), pursuant to which Colorado Railcar would manufacture and TriMet would purchase three railcars and one trailer. TriMet's price for the railcars and trailers was initially fixed at $17,821,806, but was subsequently reduced, first to $17,481,135 and later to $17,299,135. The Contract required Colorado Railcar to maintain an irrevocable standby letter of credit in the amount of $3 million continuously from the time it issued notification that manufacture would begin to the final delivery of railcars and trailers to TriMet.

CRM was incorporated November 13, 2006, for the purpose, among other potential legal purposes, of maintaining a letter of credit in the amount of $3 million as Colorado Railcar was required to do under the Contract. Colorado Railcar's CEO, Thomas Rader, is one of CRM's two corporate directors, and Colorado Railcar's CFO, John Thompson, was CRM's registered agent at

Page 7 - OPINION AND ORDER

the time CRM was incorporated. CRM's second corporate director and its sole corporate officer (both its President and its Treasurer) was Scott State,[1] who worked with Colorado Railcar as a consultant from 2004 through 2007.

On November 17, 2006, CRM obtained the Letter of Credit from KeyBank. The Letter of Credit identified CRM as the "applicant" and TriMet as the "beneficiary." The terms of the Letter of Credit required TriMet to certify in writing that CRM was in default under the Contract – although CRM was not at that time a party to the Contract – in order to draw on the letter as its beneficiary. As originally issued, the expiration date of the Letter of Credit was November 15, 2007.

Simultaneously with obtaining the Letter of Credit, CRM entered into a Letter of Credit Reimbursement Agreement (the "reimbursement agreement") with KeyBank, the terms of which required CRM to reimburse KeyBank in the amount of any payment KeyBank made to TriMet under the Letter of Credit, plus interests, charges, and expenses. On that same day, November 17, 2006, Colorado Railcar, CRM, and the *Guetzko* plaintiffs entered into an Investment Agreement whereby Colorado Railcar agreed to pay the *Guetzko* plaintiffs a fee in exchange for their promise to provide collateral to secure CRM's obligation to reimburse KeyBank in the event TriMet drew on the Letter of Credit.

In April 2007, TriMet learned for the first time that CRM, rather than Colorado Railcar, was the applicant on the Letter of Credit. Effective April 20, 2007, TriMet, Colorado Railcar, and CRM agreed to a written modification of the Contract (Modification No. 1), pursuant to which CRM became a party to the Contract for the sole purpose of making a default by Colorado

---

[1] Former member-case defendant Jeffrey State is Scott State's brother.

Page 8 - OPINION AND ORDER

Railcar under the Contract constitute a default by CRM for purposes of the Letter of Credit. Rader represented CRM in the negotiation of Modification No. 1, and State signed Modification No. 1 on CRM's behalf. In addition, in connection with Modification No. 1 CRM supplied to TriMet certain organizational resolutions issued by CRM's board of directors providing that only officers of the corporation – namely, Scott State and no other person – were authorized to enter into or negotiate any agreements on CRM's behalf.

In October 2007, the parties agreed to extend the Letter of Credit's expiration date from November 15, 2007, to May 15, 2008. Rader and Thompson participated in the extension negotiations, and Scott State did not, although he ultimately signed the amendment that effected the extension.

On January 16, 2008, TriMet and Colorado Railcar entered into a Project Monitoring Agreement (the "PMA") that modified their rights and obligations under the Contract. CRM was not a party to the PMA, nor was CRM directly advised that the PMA had been executed – that is, Scott State was not advised, although Rader was necessarily aware of the PMA in consequence of his status as Colorado Railcar's CEO. The PMA modified the relationship between Colorado Railcar and TriMet, in relevant part, as follows: under the PMA, TriMet would make "special contract payments" to or on behalf of Colorado Railcar, including payments not provided for under the Contract; TriMet was authorized to fund these special payments by drawing on the Letter of Credit; such special payments, if neither earned under the Contract nor repaid by Colorado Railcar, would become "damages" under the Contract; and TriMet was authorized to compensate itself for any such special payments that Colorado Railcar failed to repay by drawing on the Letter of Credit. In addition, under the PMA a "financial monitor" was appointed to

Page 9 - OPINION AND ORDER

oversee Colorado Railcar's operations, and TriMet was given authority to approve or disapprove of Colorado Railcar's budgets and expenditures.

The PMA was modified on February 21, 2008, primarily to add Alaska Railroad Corporation as an additional party. CRM was not a party to the amended PMA, nor was the amended PMA disclosed directly to CRM.

In April 2008, the parties agreed to a second extension of the expiration date of the letter of Credit, from May 15, 2008, to November 15, 2008. Rader and Thompson were involved in the negotiation of the extension and Scott State was not, although he signed the amendment that effected the extension. No party informed Scott State of the existence of the PMA or amended PMA prior to CRM's consent to the extension.

In June 2008, Thompson advised Scott State of the existence of the amended PMA. Scott State requested that Thompson send him a copy of the amended PMA, and Thompson did so. State read the amended PMA at that time and understood, at a minimum, that it "purported to give TriMet the right to call on the [L]etter of [C]redit to compensate [itself] for special contract payments under the PMA." Scott State did not contact TriMet to discuss the amended PMA or its impact on CRM's obligations under the Letter of Credit at that time, but rather discussed the matter with KeyBank and hired an attorney to represent him and/or CRM.

In or around September or October 2008, Colorado Railcar completed the manufacture and delivery of the railcars and trailer, and shortly thereafter ceased operations. Prior to the completion date, TriMet made more than $5.5 million in special contract payments to Colorado Railcar under the auspices of the PMA and amended PMA. On October 22, 2008, TriMet attempted to draw on the Letter of Credit to reimburse itself for $3 million of those special

contract payments. This action followed.

## II. Material Procedural History

In its order dated May 26, 2010, as noted above, the court granted summary judgment in TriMet's favor as to CRM's claims for declaratory judgment and common-law fraud in the lead case, as to CRM's crossclaim for breach of statutory warranty premised on material fraud in the member case and as to the plaintiffs' claim for declaratory judgment in the member case. The court further granted summary judgment in TriMet's favor as to CRM's crossclaims for unjust enrichment, money had and received, and breach of contract in the member case, with leave for CRM to refile those crossclaims in the event it suffered actual damages in connection with TriMet's draw on the letter of credit at some future date. The court further granted summary judgment in CRM's favor as to the narrow question of TriMet's liability on CRM's crossclaim for breach of statutory warranty for falsely certifying CRM's default in the member case, expressly leaving open the question of CRM's damages in connection with that claim.

On July 27, 2010, CRM paid KeyBank $3,180,082.50 in satisfaction of the consent judgment entered against it in the member case in connection with KeyBank's breach of contract crossclaim against it. On July 29, 2010, KeyBank filed a satisfaction of judgment indicating that it had received $3,180,082.50 from CRM. On August 5, 2010, CRM amended its pleading in the member case to refile its crossclaims for unjust enrichment, money had and received, and breach of contract against TriMet, alleging its payment to KeyBank as damages in connection with each crossclaim.

## ANALYSIS

CRM now moves for summary judgment as to each of its four crossclaims against TriMet. TriMet opposes CRM's motion, and moves for summary judgment in its own favor as to CRM's crossclaims for unjust enrichment and for money had and received.

As noted above, the court's order dated May 26, 2010, granted summary judgment in CRM's favor as to its crossclaim for breach of statutory warranty for falsely certifying CRM's default of its obligations under the Contract, leaving open the question of CRM's damages incurred in connection with that breach. For the reasons set forth in that order (08-122: #138; 09-1135: #113) and in the court's order dated December 22, 2009 (08-122: #98; 09-1135: #70), I decline TriMet's invitation to reconsider the legal conclusions underpinning that decision.

On July 27, 2010, CRM paid KeyBank $3,180,082.50 in satisfaction of KeyBank's consent judgment against it. That payment by CRM was necessary pursuant to its reimbursement agreement with KeyBank, and therefore constituted damages incurred by CRM in connection with TriMet's breach of statutory warranty for falsely certifying CRM's default of its obligations under the Contract. TriMet offers no evidence to dispute that CRM tendered or that KeyBank received that payment.

There being no question of fact as to CRM's damages or as to whether CRM's damages were a consequence of TriMet's breach of its statutory warranty under O.R.S. 75.1100(1)(b), CRM is entitled as a matter of law to summary judgment on its remaining crossclaim for breach of statutory warranty, and to an award of damages in the amount of $3,180,082.50, plus prejudgment interest from July 27, 2010.

In light of the foregoing, all other claims for relief asserted by all other parties to this

consolidated action are moot. CRM's motion for summary judgment is therefore denied as moot as to its crossclaims for unjust enrichment, money had and received, and breach of contract, and TriMet's motion for summary judgment is denied as moot in its entirety.

## CONCLUSION

For the reasons set forth above, CRM's motion (08-1266: #140; 09-1135: #118) for summary judgment is granted as to its crossclaim for breach of statutory warranty and otherwise denied as moot, TriMet's motion (08-1266: #147; 09-1135: #125) for summary judgment is denied as moot, and CRM is awarded damages in the in the amount of $3,180,082.50, plus prejudgment interest from July 27, 2010. All remaining claims for relief are dismissed with prejudice as moot, and all pending motions are denied as moot. A final judgment shall be prepared.

Dated this 10th day of November, 2010.

Honorable Paul Papak
United States Magistrate Judge